**UNITED STATES of America,**
**Plaintiff,**

v.

**Stanley T. KUSPER, Jr., Marie H. Suthers, Francis P. Canary, as the Board of Election Commissioners of the City of Chicago, Illinois, and C. Jack Przyblinski, as Chief Clerk of the City of Chicago, Illinois, Defendants.**

No. 70 C 2521.

United States District Court,
N. D. Illinois, E. D.

Oct. 21, 1970.

John N. Mitchell, Atty. Gen., of the U. S., Washington, D. C., William J. Bauer, U. S. Atty., for the N. D. of Ill., James R. Thompson, First Asst. U. S. Atty., and John B. Simon, Asst. U. S. Atty., Chicago, Ill., for plaintiff.

William R. Ming, Jr., Sophia H. Hall, Howard Miller and Andrew M. Raucci, Chicago, Ill., for defendants.

## MEMORANDUM OPINION
## and DECREE

PERRY, District Judge.

This is a suit by the United States alleging violations of election law procedures by members of the Chicago Board of Election Commissioners and the Board's chief clerk. Plaintiff seeks injunctive relief.

The complaint is brought pursuant to the provisions of Article 1, Section 2, Clause 1, and Article 1, Section 4, Clause 1, of the Constitution of the United States, and Title 28 of the United States Code, Section 1345.

The defendants are Stanley T. Kusper, Jr., Marie H. Suthers, Francis P. Canary, as the Board of Election Commissioners of the City of Chicago, Illinois, and C. Jack Przybylinski, as Chief Clerk of the Board of Election Commissioners of the City of Chicago, Illinois.

Article 1, Section 2, Clause 1 of the Constitution of the United States provides:

"The House of Representatives shall be composed of Members chosen every second Year by the People of the several States, and the Electors in each State shall have the Qualifications requisite for Electors of the most numerous Branch of the State Legislature."

Article 1, Section 4, Clause 1 of the Constitution provides:

"The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by law make or alter such Regulations, except as to the Places of chusing (sic) Senators."

Title 28 U.S.C. Section 1345 provides:

"Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress."

Both counsel for plaintiff and for defendant assert this suit is a case of first impression. Counsel for all the parties were requested by the Court to cite any authority for or against the right to bring this action. Counsel for both sides have stated they found none. This Court has researched the problem and can find no such case. Under these circumstances the Court does not therefore have the benefit of stare decisis in reaching its decision herein.

Plaintiff charges that, although the Congress of the United States has never passed any statute governing or controlling the election of Representatives and Senators to Congress, it has allowed the several states of the United States to enact legislation governing such elections, and that by not altering state law and allowing it to stand Congress has thereby adopted the election laws of the various states, including those of the State of Illinois. Plaintiff contends that the Illinois election law as set forth in Chapter 46 of the Illinois Revised Statutes, and commonly known as the Illinois Election Code, may be enforced in the United States District Courts in the same manner as if Congress itself had adopted the Code governing elections in Illinois, including Chicago and Cook County. The plaintiff then charges that the defendants have not been and are not now enforcing the election laws of the State of Illinois as provided in a number of the sections of said Code. Plaintiff states it has an interest in the forthcoming election on November 3, 1970 and claims the alleged violations of law have and will cause grave and irreparable harm to plaintiff and its citizens.

The plaintiff complains more specifically that the defendants as a Board of Election Commissioners are not sitting personally and carrying out their duties to hear challenges to registrants but are delegating the came contrary to the law. Plaintiff also asserts that the defendants are sending out letters and literature in the form of instructions to the election judges in form contrary to the law and that defendants are instructing the judges to ignore "so-called peace officers" in their precincts and to look only to police officers assigned to their respective precincts for aid in enforcing law and order on election day in their respective precincts. The complaint further alleges that the defendants are refusing to permit challengers and poll watchers to see the registration cards of challenged voters and that they are only shown the names of such voters, their address, and the name of the political party in whose primary such voters cast their primary votes. Plaintiff charges that all of these alleged acts and others set forth in the complaint are not only a violation of the various sections of the Illinois Election Code but also that these acts violate the intent of Congress and the rights of the United States and more particularly that such acts violate Article 1, Section 2, Clause 1, and Article 1, Section 4, Clause 1 of the Constitution of the United States. The plaintiff seeks injunctive relief of this Court against defendants, their officers, agents and employees.

The defendants in their answer deny that this Court has any jurisdiction of the parties or the subject matter, though they admit that they are all residents or citizens or both, that all are found within the territorial venue of the Court, and that all have either been served with process or have entered their appearance herein. Defendants admit that they have sent out letters and instructions to the election judges in their jurisdiction, that they have delegated certain acts to deputies, and that they have instructed election judges in the procedure to be followed by them on election day in their respective precincts. They deny that they have acted contrary to any section or part of the law as provided in Chapter 46 of the Illinois Revised Statutes, commonly known as the Illinois Election Code, or that they have violated any other provision of the laws of the State of Illinois or of the United States or of the Constitution of the United States as charged by the plaintiff, or in any other manner. On the contrary they answer and represent that they are performing their duties lawfully in every respect and in the same or similar manner to which they and their predecessors have carried on such duties in the past.

The defendants assert that most of the plaintiff's complaint consists of conclusions and therefore deny such conclusions. They deny that the plaintiff is entitled to injunctive relief or to any relief whatsoever and ask that the complaint be dismissed.

A temporary restraining order was heretofore entered in this case on October 9, 1970 by another judge of this court who was holding court after court hours. On October 11, 1970 at the hearing before this Court, the defendants moved for dissolution of the temporary restraining order on the ground that the plaintiff had not been given proper notice or in good faith had not attempted to give notice of the hearing on the temporary restraining order prior to an ex parte hearing. Upon hearing the Court granted defendants' motion and dissolved the temporary restraining order.

Plaintiff made no new motion for a temporary restraining order but announced it was ready to proceed upon its motion for a preliminary injunction. Defendants filed their answer herein and stated that they and their counsel had abided by the terms of the temporary restraining order and had utilized the time in preparing for immediate trial.

Plaintiff's counsel announced that he had a Request for Admissions; that he had subpoenas duces tecum out for some of the defendants and for certain docu-

ments, and that he could not go to trial until these were complied with by the defendants. Counsel for defendants thereupon pointed out that all of the defendants except one, who was hospitalized, had been in open court at the beginning of the hearing and were available and waived the serving of subpoenas. Defendants' counsel asked for a copy of the Request for Admissions and subpoenas duces tecum and counsel for plaintiff supplied them. The Court recessed its hearing for a short time to enable counsel for defendants to familiarize himself with them.

Upon reconvening counsel for defendants announced that he would waive the ten day notice required to answer the Request for Admissions and would answer them orally. He also stated the defendants were present in open court with all records requested by the plaintiff in the subpoenas duces tecum. Counsel for the defendants thereupon made oral answer to the Request for Admissions and delivered to counsel for the plaintiff all documents called for in the subpoenas duces tecum.

The Court thereupon directed the counsel for plaintiff to call witnesses to the stand and proceed to trial. Plaintiff called as an adverse witness defendant Francis P. Canary. He was examined at length by both counsel. The plaintiff then rested. Counsel for defendants thereupon moved that the Court dismiss the complaint for want of jurisdiction and for failure to present any evidence that proved the plaintiff's allegations or proved a cause of action. The Court took the motion under advisement and directed defendants to proceed with their defense.

Defendants called Stanley T. Kusper, Jr., one of the defendant Commissioners, to the stand and examined him and plaintiff's counsel waived cross-examination of said defendant. Thereupon defendants rested. There was no rebuttal evidence. The case was then argued by the respective counsel.

■ The Court finds the Illinois Election Code provides in Sections 6–35.-01 and 17–14, in part, that a voter is not entitled to assistance at the polls on election day unless he declares upon oath "that he cannot read the English language." The defendants have in the past and are now instructing election judges that a voter cannot have assistance at the polls unless the voter states under oath that the voter "cannot read or write the English language sufficiently well to be able to comprehend or understand what he or she would be doing in a voting machine." The Court finds the action of the Board in so doing is merely giving a common sense interpretation of the law to judges of election who are laymen. The instructions have one and the same meaning and there is no violation of duty by defendants in the rewording. Defendants have in various elections since 1964 used the same wording.

■ The Court finds that Chapter 46 of the Illinois Revised Statutes, Section 6–41 provides that for the ten days following the canvass in the precinct, the Board of Election Commissioners shall sit to revise their registry. Plaintiff charges defendants are required to personally hear each and every complaint of any voter who seeks to have his or her name restored to the voter list as a qualified voter. They charge the defendants are required by law to hold an adversary hearing at which both the challenged voter and canvasser, or person who reports a voter as not a resident of a precinct, are present.

The defendants are authorized under Chapter 46 of the Illinois Revised Statutes, Section 6–26, to make all rules and regulations necessary and not inconsistent with the statute in order to carry out their duties. They have made such rules and have appointed deputies to administer oaths and to aid the defendant Commissioners in carrying out their duties. The evidence showed that as many as 150,000 names may be removed from the voters' lists as a result of suspect notices sent in an election year. After the notices are mailed, the evidence further reveals that an average

of 3,000 persons make immediate application for reinstatement of their names on the voters' list when because of faulty mail delivery or other good cause their names were previously removed from the voters' list.

Plaintiff charges defendants are obligated to personally sit in each of the 3,000 cases in an adversary hearing with both the voter seeking reinstatement and the canvasser present. The Court finds no requirement in the statute that the defendants sit personally and finds that defendants have been and are performing their duties in accordance with the law. Such duties as the defendants delegate are ministerial and necessary and are done so pursuant to the regulations of the Board of Election Commissioners made pursuant to Chapter 46 of the Illinois Revised Statutes, Section 6–26.

The Court finds that Chapter 46, Illinois Revised Statutes, Section 6–41, provides that when a canvasser goes out in a precinct and does not find a voter at an address and leaves a suspect notice, he shall come back and make affidavit to the Board of Election Commissioners that he left such notice. This practice has been and is being followed. Section 6–40 provides that the Board of Election Commissioners shall mail out an official notice to the voter saying that thereafter if said voter does not respond that his registration shall be cancelled.

The Court finds from the evidence that the suspect notice left by the canvasser on a form provided by the Board of Election Commissioners does contain language informing the voter that unless he responds his voter's registration shall be cancelled. In some instances the words used are "will be cancelled." The Court finds that on the suspect letter form sent out by the Board of Election Commissioners the words used are, according to the testimony, "may be cancelled if you do not show up." Plaintiff charges that the use of "may" instead of "shall" in such notice is a violation of duty by defendants.

The Court finds this wording does not violate the statute. Moreover, no evidence was offered to show that any voter has ever had his name removed or has been prejudiced or injured by reason of such wording. No evidence was offered that any voter's name has been left on the voters' list after such suspect letter was sent to the voter and he did not respond. This claim by plaintiff is purely semantic and a nitpicking charge.

The Court finds that the only other substantial manner in which the defendants are charged by plaintiff with violating their election duties is in connection with letters sent to election judges informing them of their duties on election day. In said letters, the plaintiff charges and defendants admit and the Court finds that said letters contain in part the following language and underscoring of words:

"The Chicago Police Officer is the only lawman authorized to act in a precinct polling place, and *you* have the *sworn duty* to preserve law and order and the orderly conduct of the election in your polling place by using his services.

\* \* \* \* \* \*

"*Remember,* you have the sworn obligation to *obey these rules:*

"3. DO NOT allow any watcher or challenger to examine applications for ballot, precinct binders, or other forms.

\* \* \* \* \* \*

"*Remember, you* have the sworn duty to order from the polling place all challengers, watchers, so-called peace officers (other than the Chicago Police Department officer) and any and all persons who are above the legal limit of watchers and challengers allowed for your precinct polling place. If you fail to do so, you will be responsible for any improper action in the precinct polling place."

The Court finds the foregoing provisions were contained in letters and instructions sent to election judges as far back as March 30, 1967. Defendants allege now that if the instructions are

carried out they will interfere with rights of election judges and challengers to carry out their duties in the present election.

Section 18–7 of the Election Code provides:

"Said judges of election shall have the authority and it shall be their duty to keep the peace, and to cause any person to be arrested for any breach of the peace or for any breach of election laws, or any interference with the progress of registration, revision, election or of the canvass of the ballots; and it shall be the duty of all officers of the law present to obey the order of such judges of election, or either of them, and an officer making an arrest, by direction of any judge, shall be protected in making such arrest the same as if a warrant had been issued to him to make such arrest."

Similarily, Section 11–4, provides, in part:

" * * * Said Board of .Election Commissioners may demand of the chief of police or the sheriff, to furnish officers of the law to attend during the progress of any registration, revision or election, at any place or places of registration, or any polling place, or places, designated by said commissioners, or to attend at any meeting of said commissioners. Said officers of the law, shall be furnished by said chief of police or sheriff and shall be stationed in the place or places of registration and polling place or places in such manner as said commissioners shall direct, and during said assignment shall be under the direction and control of the election commissioners."

■ The oral evidence adduced and undisputed herein established that the Board of Election Commissioners, pursuant to the statute, has chosen the Police Department of the City of Chicago to provide police officers for polling places, and established that if any sheriff, deputy sheriff or agent of the Federal Bureau of Investigation, or other duly qualified law enforcement official appears in a precinct for the enforcement of law at a polling place and duly identifies himself, he will be allowed to carry out his duty so long as it does not interfere with the lawful conduct of the election at the precinct polling place. There was no evidence to the contrary. The Court finds that in said letters and instructions the reference to so-called peace officers was meant to refer to persons who are not in fact law enforcing officers but persons merely masquerading as such and seeking to disrupt precinct elections.

■ The Court finds from the evidence that the election judges are informed by the defendants that they shall not reveal any information in any voters' registration file except the name and address of the voter and the political party in whose primary the voter voted. The evidence showed the judges of election are instructed to furnish that information to any challenger or watcher but that the other information is exhibited only to the judges and is retained as a confidential file pursuant to the provisions of the Illinois Election Code as set forth in Chapter 46, Illinois Revised Statutes, Section 6–65. The Court further finds from the evidence that defendants have not violated and are not now threatening to violate this provision and there is no evidence that they threatened to or intended to do so.

The procedure which defendants have directed the precinct election judges to follow is not only lawful but it is necessary. If any challenger or poll watcher could open up the files of one voter, challenge his signature, bring in a handwriting expert, and there at the precinct polls have an adversary hearing, the challenger could do the same for any number of voters. Such a procedure would result in chaos and destructive disruption at the polls. It would invite organized sabotage of the whole election procedure.

This Court finds that the defendants have not violated and do not threaten

to violate any provisions of the Election Code of the State of Illinois, or of any Federal Statute, or of the Constitution of the United States. On the contrary, the Court finds and concludes that defendants have heretofore fully conformed to the provisions of the Illinois Election Code and to all other laws of the State of Illinois which impose duties upon them and to all Federal statutes and provisions of the Constitution of the United States. The evidence herein established they intend to continue to do so.

■ An injunction is an extraordinary remedy. It should not be granted unless the applicant makes a clear showing of threatened irreparable damage to the applicant. Plaintiff has not so shown.

Furthermore, for this Court to grant the injunctive relief sought herein would, in effect, be the green light for the filing of such suits and for nationwide control of the election machinery through injunction by the Federal courts without any authority from Congress and contrary to the spirit and letter of the Constitution of the United States.

■ At the conclusion of all of the evidence, defendants moved to dismiss this cause for lack of jurisdiction, for failure to prove any facts in support of the jurisdictional allegations made in the complaint and for failure to prove any violation of the law of the State of Illinois or of any Federal statute or any provision of the Constitution of the United States. The Court took the motion under advisement. The Court now considers it.

Plaintiff herein is the United States Government and under the provisions of Article III, Section 1 of the Constitution of the United States and under Title 28 U.S.C. Section 1345, it is empowered to file suits in the United States District Court. In fact this court is the only forum in which the United States has specific general authority to sue, except in suits involving Ambassadors, other public Ministers and Consul and in those cases in which a State shall be a party, which cases must be brought before the Supreme Court of the United States pursuant to Article III, Section 2 of the Constitution of the United States. Plaintiff alleges defendants have violated Article 1, Section 2, Clause 1, and Article 1, Section 4, Clause 1 of the Constitution of the United States. That allegation creates a Federal question. The defendants either reside or are citizens in the jurisdiction of this Court and so admit. That constitutes jurisdiction in this Court to hear the complaint filed herein. The Court finds and concludes that it has jurisdiction to hear this cause.

The Court relies on the following United States Supreme Court cases: Ex parte Siebold, 100 U.S. 371, 25 L.Ed. 717; Sanitary District of Chicago v. United States, 266 U.S. 405, 45 S.Ct. 176, 69 L.Ed. 352; Wyandotte Transportation Co. v. United States, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407, and numerous other cases.

■ Congress has never passed a statute that governs or regulates the holding of elections for members of Congress such as are to be elected on November 3, 1970. That has been left by Congress to the States for control and under the provisions of the Tenth Amendment to the Constitution of the United States it still remains within their control and regulation. The fact that Congress has not taken action does not mean by any stretch of the imagination that Congress has adopted the election laws of the state. Failure of Congress to assume jurisdiction of elections cannot bring state election laws under Federal control.

Inasmuch as the Court has found that the defendants have carried out the election laws of the State of Illinois, pursuant to the Illinois Election Code, and have not in any way violated such laws, and have not violated any Federal statute or any provision of the Constitution of the United States, this Court must grant the motion of the defendants to dismiss this cause for failure to prove that any Federal question exists and that defend-

ants have violated any Federal statute, provision of the Constitution of the United States, or any statute of the State of Illinois. Said motion is, therefore, granted.

Now, therefore, for want of equity and lack of proof of the existence of a Federal question, it is ordered, adjudged and decreed that the prayer for injunctive relief be and the same is hereby denied and the Complaint herein be and the same is hereby dismissed.